**FILED**



OCT 5 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MILLENNIUM DRILLING CO., INC., | No. 16-17332 |
| Plaintiff-Appellee, | D.C. Nos. 2:12-cv-00462-MMD-CWH 2:13-cv-00078-MMD-CWH District of Nevada, Las Vegas |
| v. | |
| BEVERLY HOUSE-MEYERS; BEVERLY HOUSE-MYERS REVOCABLE TRUST; GRACE MAE PROPERTIES, LLC; AND, ROBERT H. HAMRICK AND MOLLY KAY HAMRICK, | ORDER |
| Defendants-Appellants. | |

Before: SCHROEDER, EBEL,* and GOULD, Circuit Judges.

The memorandum disposition in the above-captioned matter filed on July 30, 2018 is amended as follows:

On page 3, line 15 of the memorandum disposition, replace <Investors' 2030 obligation> with <Investors' future obligation>.

On page 4, line 10 of the memorandum disposition, replace <Investors breached their obligation> with <Investors breached their future obligation>.

On page 5, line 9 of the memorandum disposition, replace <the Subscription Note [in 2030] unless> with <the Subscription Note unless>.

---

\* The Honorable David M. Ebel, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

On page 6, line 6 of the memorandum disposition, replace <share of Falcon's debt until 2030.> with <share of Falcon's debt until the Subscription Notes matured, no earlier than 2025.>

On page 6, line 22 in note 5 of the memorandum disposition, replace <they are not obligated to do so until 2030.> with <they are not obligated to do so until the Subscription Notes mature.>

An amended memorandum disposition is filed concurrently with this order.

The Motion for Leave to File Reply in Support of Petition for Panel Rehearing is GRANTED. The Petition for Rehearing is DENIED. No future petitions for rehearing will be entertained.

IT IS SO ORDERED.

FILED

**NOT FOR PUBLICATION**

OCT 5 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MILLENNIUM DRILLING CO., INC., | No. 16-17332 |
| Plaintiff- Appellee, | D.C. Nos. 2:12-cv-00462-MMD-CWH 2:13-cv-00078-MMD-CWH |
| v. | |
| BEVERLY HOUSE-MEYERS, BEVERLY HOUSE-MEYERS REVOCABLE TRUST, HAMRICK TRUST, GRACE MAE PROPERTIES, LLC, ROBERT H. HAMRICK, MOLLY KAY HAMRICK, | AMENDED MEMORANDUM[*] |
| Defendants-Appellants. | |

Appeal from the United States District Court
for the District of Nevada
Miranda M. Du, District Judge, Presiding

Argued and Submitted June 15, 2018
San Francisco, California

Before: SCHROEDER, EBEL,[**] and GOULD, Circuit Judges.

A jury found that Defendant Investors 1) breached the express terms of at

---

[*]       This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]       The Honorable David M. Ebel, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

least one of the contracts they entered into with an oil and gas investment partnership (Falcon Partnership), and its drilling company (Plaintiff Millennium Drilling Co.), and also 2) breached the implied covenant of good faith and fair dealing arising from at least one of those contracts. (The relevant agreements are governed by Delaware law.) On appeal, Investors argue that the district court erred in denying their post-judgment Fed. R. Civ. P. 50(b) motion for judgment as a matter of law on these claims. Reviewing that decision de novo, see Colony Cove Props., LLC v. City of Carson, 888 F.3d 445, 450 (9th Cir. 2018), we agree that the district court erred. We, therefore, reverse the judgment entered on the jury's verdict with regard to Millennium's claims pertaining to Falcon and remand for entry of judgment as a matter of law in Investors' favor on these claims.[1] In light of that decision, we need not address Investors' other arguments raised on appeal.

In granting Investors relief, we conclude as an initial matter, and contrary to the district court, that Investors adequately preserved their Rule 50(b) arguments by asserting them in a mid-trial Rule 50(a) motion. See EEOC v. Go Daddy Software, Inc., 581 F.3d 951, 961 (9th Cir. 2009).[2]

---

[1] The trial also involved Millennium's claims arising from two other oil and gas investment partnerships, as well as Investors' claims asserted as third-party plaintiffs. None of these other claims are at issue here.

[2] We can understand the district court's confusion with the procedural posture of the case, for which all parties must share some responsibility. Nevertheless, we

2

Turning to the merits, Millennium had three theories underlying its claims for breach of contract and breach of the implied covenant of good faith and fair dealing, and the district court instructed jurors on each of these three theories. Because the jury was only asked to return a general verdict, however, we cannot tell on which theory or theories the jury found for Millennium, requiring there to be sufficient evidence to support the jury finding for Millennium on all three theories in order to survive Investors' Rule 50(b) motion. See United States v. $11,500.00 in U.S. Currency, 869 F.3d 1062, 1068-70 (9th Cir. 2017) (holding, in considering challenges to jury instructions in civil case, that when case was presented to jury under two theories and appellate court cannot determine on which of those two theories the jury based its general verdict, appellate court will not exercise its discretion to assume jury's verdict rested on non-defective theory). However, the record here is insufficient to support a jury finding for Millennium on any of its three theories of breach.

**1.** Millennium alleged that Investors' future obligation to repay their Subscription Notes with interest was accelerated when Investors disavowed those obligations in 2011 and 2012, and Investors then failed to repay those obligations

---

have held that even ambiguous or inartfully made Rule 50(a) motions are sufficient to preserve arguments for Rule 50(b) purposes. See Go Daddy Software, 581 F.3d at 961.

immediately. But disavowing their future obligation to repay the notes is not an "Event of Default" listed in the Subscription Notes that would have made that obligation immediately due and payable.[3] See Elliott Assocs., L.P. v. Bio-Response, Inc., No. CIV.A. 10624, 1989 WL 55070, at *1, *3 n.1, *4 (Del. Ch. May 23, 1989) (unpublished) (holding, under New York law, that even if defendant repudiated its future obligation to pay debentures when they became due and payable, defendant would not yet be in default under the terms of the debentures, which did not list anticipatory repudiation as one of the events of default; noting Delaware law does not differ).[4]

**2.** Millennium next alleged that Investors breached their future obligation to pay a portion of Falcon's debt owed to Millennium on those two parties' Turnkey Note. Falcon's debt to Millennium under the Turnkey Note was accelerated in 2011 because of Falcon's insolvency. Further, under their Assumption

---

[3] Investors adequately raised this issue in their Rule 50(a) motion when they argued "that the maturity date on these notes [is] the year . . . 2030," "[t]he evidence is clear that there has been no default event that would trigger acceleration of any of these notes," and Millennium's expert testified that no "event of default" listed in the Subscription Notes had occurred.

[4] Millennium asserts on appeal that, because Investors never argued that the term "default" as used in the Subscription Notes was unambiguous, it was appropriate for the trial court implicitly to treat "default" as ambiguous and have the jury interpret it. But no one argued this theory to the district court, at least not before the jury's verdict, and the jury was never instructed to determine whether the term "default" under the Subscription Notes included repudiation of future obligations.

Agreements with Millennium and Falcon, Investors "unconditionally and irrevocably assume[d] [their] Share . . . of the principal amount of any and all indebtedness, liabilities or obligations of the [Falcon] Partnership to Millennium arising out of the Turnkey Note and the Turnkey Agreement." Investors' share of Falcon's debt corresponds to the amount Investors owe on their Subscription Notes. But each Assumption Agreement's "Time of Payment" provision states that, "[e]xcept as otherwise expressly provided in this Agreement, [Investor] shall not be required to pay the Indebtedness assumed in accordance with this Agreement until the maturity of the Subscription Note unless accelerated by reason of a default under the Subscription Note." As previously explained, Investors did not default under their Subscription Notes.

Citing to the initial clause in the Assumption Agreement's "Time of Payment" provision—"[e]xcept as otherwise expressly provided in this Agreement"—Millennium points to the Assumption Agreement's "Default" provision. That provision lists several circumstances that would result in "the Indebtedness assumed under this Agreement . . . becom[ing] immediately due and payable."

The first such event of default under the Assumption Agreement would be if Investors "default[ed] in payment of the Subscription Note[s]." But, as just explained, Investors did not default on repaying their Subscription Notes.

5

A second event of default under the Assumption Agreement would be if Investors "default[ed] . . . in any obligation assumed by him under this Agreement." But Investors did not default on their obligations under the Assumption Agreement because, according to that agreement's "Time of Payment" provision, Investors are not obligated to pay their assumed share of Falcon's debt until the Subscription Notes matured, no earlier than 2025.[5]

Third, the Assumption Agreement's "Default" provision provides that "the Indebtedness assumed under this Agreement shall . . . become immediately due and payable" if

> the Participant [Investor] should become insolvent or be unable to meet his debts as they mature, or make any assignment for the benefit of creditors, or if a petition for relief under any bankruptcy or insolvency law or code should be filed by or against the undersigned, or if a custodian or similar agent is authorized or appointed to take charge of any of the property of the [Investor] . . . .

No one argued that any of these default events occurred here.

**3.** Lastly, Millennium alleged that Investors' "stated intention not to honor their obligations under the Assumption Agreements" was a default that accelerated those obligations. But, as just explained, disavowal or repudiation is not an "event

---

[5] It may be, then, that Investors must repay Millennium the amount they owe on their Subscription Notes, principal and interest, but they are not obligated to do so until the Subscription Notes mature. That issue, however, is not before us in this appeal.

of default" expressly listed in the Assumption Agreements.[6]  See Elliott Assocs.,
1989 WL 55070, at *1, *3 n.1, *4.

In conclusion, the record does not support accelerating Investors' obligations under either the Subscription Notes or the Assumption Agreements.  Investors, therefore, have not breached those agreements by not yet repaying the amounts owed on their Subscription Notes.

**REVERSED AND REMANDED**.

---

[6] Investors adequately challenged the evidence to support Millennium's second and third theories of breach in their Rule 50(a) motion, as well.